We are ready to call the next case. Antonio v. Harrahs Atlantic City, PropCo, LLC. Mr. Bruno, you have the floor. Good morning, your honors. I represent Rene Antonio, who is a patron at Harrahs Casino. And this case involves the liability of a property owner for injuries that occurred on its premises, based primarily upon the environment that it created on their premises, when the injuries and the accident to my client were foreseeable and, in fact, likely based upon a nightclub arrangement that Harrahs had operating at the time. This matter comes up here on a motion for summary judgment, and I would submit that the trial judge did not follow the New Jersey case law with regard to owners of property, the restatement of torts, which are followed in New Jersey, as well as the New Jersey model jury charges. And, in fact, he usurped the jury's role in deciding material facts. Before we get to that, can we just touch upon the threshold question that I appreciate you providing supplemental briefing on, which is the question of this court's jurisdiction. As you undoubtedly know, we have an obligation to review and confirm our claims. You rely, it seems, on the standard that is well accepted, that there is deference given to the well-pled allegations. But even taking those allegations to their fullest extent, can you help me better understand where there is an amount of controversy above $75,000? There is not a general amount of damages claimed here. There's a very specific set of injuries. And even with the amplification provided in your supplemental briefing, I'm wondering if we still have before us a clean enough record of where this court's jurisdiction is. Well, Judge, what I can tell you is, as I outlined in my letter brief, the defense, although they paid lip service to the $75,000, they never challenged it. They never filed a motion with it. They never had my client examined for her functional capacity or independent medical examination. The injury that my client sustained is a serious injury on her right hand, which is her dominant hand. She's a 55-year-old woman who had eight spiral fractures between her ring finger and her little finger on her dominant hand. She testified at her deposition, you have that record before you, where her doctors have told her she's got a permanent injury with regard to loss of function in those two fingers, and also a deformity in that her ring finger has shortened as a result of the healing nature of the fracture. And she relayed in her deposition that she can't do simple things such as her hair with regard to her right hand, which she used to do before, and functions that require gripping. I think that common experience tells us that in terms of gripping, the ring finger and the little finger are the most important fingers on your hand for terms of strength. The index finger, the first three fingers, the thumb, the index finger, and the middle finger are more for dexterity, but the strength actually comes from your ring finger and your little finger. And she, in her deposition, said that she has loss of strength in those two fingers. I think, you know, as a 55-year-old, I mean, the court knows her life expectancy by the life expectancies tables in New Jersey would be another 27 years. So the fact that she still has problems with it, it was not a simple break. As I said, it was multiple fractures within those two fingers, which has left her with a permanent disability and a permanent disfiguration. And ultimately, I think that that sustains our pleading and demand of an excess of $75,000. And she'll need some sort of compensatory damages to deal with the loss of movement that you're outlining. That is correct, Judge. The ongoing pain and the loss of motion, which provides restrictions in some of our activities that are normal activities, not special activities. Okay. So, Mr. Bruno, you were saying that the district court's decision usurped the that dancing and drinking on a crowded nightclub floor within a few inches of a pool is anything less than an extraordinarily obvious risk, just like as obvious as it can get kind of risk? Well, I don't know that it was. It depends upon the type of dancing that you have. I don't want to cast dispersions on 55-year-olds, but I'm assuming that if you're going to a nightclub to dance, they weren't doing the waltz or something like that. They were drinking and the sort of dancing that happens in nightclubs right up against the pool. That seems to be the factual record here. So, was there really a jury question as to the obviousness of this hazard? Well, there is because she did not, in the handful of times that she had been there, she had not witnessed anybody go into the pool, either push or bumped into the pool. And in this case, Harris has superior knowledge based upon their business model. And there's record proof that specialty controller Coulter indicated that he saw about three occasions where just dancing caused someone to wind up in the pool. And there were eight other incidents where people got pushed into the pool during one of these. Here's part of the challenge that I think you might face here, Mr. Bruno, and that is on the one hand, your briefing seems to indicate that clearly this was a hazard and Harris knew it was a hazard. They had a record that it was a hazard. But sort of a subcurrent of that is it was obviously a hazard. If you get people liquored up and you have them dancing around in a big crowd right up at the edge of a pool, that's a hazard. And Harris knew it. They had to know it. That's kind of something you're saying. But by the same token, shouldn't a thoughtful, ordinarily reasonable person know the same thing and say, well, you know what, maybe I shouldn't be right up against the pool while all this is happening. Maybe I should back myself off, you know, a few feet. Well, Judge, I submit that the restatement says that even if it's the obviousness of the hazard, it's still the responsibility of the possessor to make the appropriate arrangements. There was no designated dance floor. I think that, you know, there was no designated dance floor. There were no barriers. Based upon their experience, Harris would have the responsibility to either have a designated dance floor, prevent them dancing within a foot or two of the pool, put up some kind of a barrier around the pool when there is dancing. On that point, and I'm glad you turned to this, what is the harm that you're alleging your client suffered? Is it the fact that there is a pool in the middle of the nightclub with insufficient protections, or is it that there was a, call it an attempted or actual criminal assault or an action by a third party that caused her the harm? Because I seem to see shades of both in the discussions here, and I'm wondering which one are you focused on? Well, Judge, we really don't know, and ultimately, I don't think it makes any difference under the case law, whether it's a criminal act or a negligent act, and that's reflected in, as the restatement, and also in the jury charge. The jury charge said there could be a negligent or intentional act. Okay, so leave that aside for the moment. You're focused then on the act of the third party pushing, whether intentionally or unintentionally, Ms. Antonia into the pool, not the pool itself. Correct. Well, yes, the fact that this is going to happen, and I think the record reflects that Harris knows that every single night, there are at least two people who are arrested for disorderly police who are stationed at Harris just outside the door. And I'm glad you brought that up, right? Because you're making the connection that I think is important here. If the harm is the action of the third party, well, then it seems as though they arguably would have satisfied that duty by, among other things, having the Atlantic City Police Department stationed, having a lifeguard on duty, having 25 to 35, I think they call them uniformed control specialists, we'll just call them security guards, in the club. So if your argument is under the restatement, even if this was an obvious hazard, they still had a duty, then help me understand how they didn't meet that duty as you've defined it by taking all of those precautions. Because, well, what I would suggest is, first of all, that it would be a jury question to determine whether in fact they were sufficiently given, whether that was sufficient for their, because they know, even with the two uniformed police officers, even with their however many controls, they still have people twice a night being arrested for disorderly conduct. They still have 11 to 12 incident times where people wind up in the pool. What did they do to correct that or to change that? So it's one thing to have some measures in place, but I submit that it's a jury question, and closely the New Jersey Supreme Court case would say it would be a jury question whether that would be reasonable, whether that was enough, given the history and pattern that occurs every time that they open their doors with this business model where they have rowdy crowds, where they encourage bottle drinking of alcohol, they have what I termed flamboyant guests, hosts of Dennis Rodman. When they create this environment as their business model, I think a reasonable juror would say it would prevent people from winding up in the pool. Let me ask you if I might, Mr. Bruno, is the existence of a duty a fact question or a legal question? I think the duty comes from a legal question, but the question is whether they comply with the duty depends upon the facts. So if the district court says you don't have a duty to protect from an obvious risk, is that a statement of law, not a usurpation of the jury's role? Well, first of all, a duty for an obvious risk, but under the case law, it's a totality of circumstances test. That's what the CLOSI case says, the Supreme Court case, so that you have to take into effect not only the pool, but the nature of the activities that are around the pool and what's occurring around the pool. Everybody knows that a pool is dangerous, but if you're going to heighten the risk, which is what occurs here every night that Harris opens their doors, you've got to use some kind of heightened measures to protect your patrons because the New Jersey law requires that. Well, then it sounds like you're saying there's at least a factual component to the determination of whether there's a duty. Is that right? Well, I get it. That sounds like what you're saying. There is a factual component, at least in this case. All right. Good enough. Judge Mady or Judge Horan, any further questions for Mr. Bruno? Nothing further. No? Okay. Then we'll have you back on rebuttal, Mr. Bruno, and we'll turn to Ms. Barr for her argument on behalf of Harris. Thank you. May it please the court, Jennifer Barr with Cooper Levinson on behalf of the I know that there are two issues that I need to address. The first, I will start with the substantive, and then I will address the amount in controversy issue. But it is a legal question at this point, whether there is a duty by Harris to protect against the type of injury allegedly sustained by plaintiff. Well, then I want you to wrestle with this language of the New Jersey Supreme Court from the Closet case. Foreseeability as it impacts duty determinations refers to the knowledge of the risk of injury to be apprehended. The risk reasonably to be perceived defines the duty to be obeyed. It is the risk reasonably within the range of apprehension that is taken into account in determining the existence of the duty or exercise of care. So if the risk defines the duty and the apprehension of the risk is determined by a reasonableness standard, isn't that classically a fact question that there is indeed a factual component here that a jury should have had an opportunity to assess? Well, Your Honor is correct that reasonableness is often the job of the jury or the fact finder to determine. It is not exclusively that. I'm just thinking off the top of my head, immunity, governmental immunity, as a defense to, or qualified immunity, as a defense to a police officer. Qualified immunity regularly is denied at least temporarily because there are fact questions, right? There are factual issues that have to be resolved before a court can say, okay, on that fact, on that undisputed fact record, this is what we can say about immunity. Here, what I'm hearing Mr. Bruno say both in person, well, sort of in person, here we are all in the Zoom room, but here at argument and in his briefing is that the level of risk to be reasonably apprehended had a whole bunch of fact questions associated with it. What Harris' own safety record told it, what the level of activity going on on a regular basis was, and therefore, what should have been understood to be the risk of allowing people right up against the pool, et cetera. Why is he wrong in saying that's all risk assessment and that risk assessment is fact intensive and that plays into duty and we're entitled to have a... Now, I've put words in his mouth. He said it better than I did probably, but that's how I understand the argument to be. What's wrong with that argument? The assessment of the duty of care has traditionally been a legal question. And even though the court in, I think it was Clohessy said that, the... And we quote in our brief to... Of course, I can't put my hand on it right now. We have in our brief, two cases quoted that address that this is a legal question. It's a question of what the duty of care is a question of law for the court to determine. And the court did actually in the Hopkins versus Fox and Lazo, in the Butler case, in the Goldberg case, and the other cases that we cite, that duty of care was determined by the court. It was not sent to the jury to make a determination. For example, the supermarket cases, where the consideration of whether a security guard should be placed in a supermarket where there's high crimes, or whether one security guard is sufficient in the Butler case, those questions did not go to the jury. It was the court that decided what the reasonable duty or what the reasonable risk to be apprehended was. Well, here the court seemed to go straight to the restatement second 343A question, the obviousness of the risk. Didn't the court in the first instance have to answer the question posed by section 343, which talks about the landowner being liable and having a responsibility to deal with risks to invitees that should reasonably be understood to exist? Or is there an acceptance? Do you think there's some implicit acceptance by the district court that yes, there was risk here, and yes, there was an obligation to deal with it? Well, in this matter, I don't think that... Yeah, I'm trying to find out. Right. Judge Rodriguez, in this case, went straight to the issue of obviousness of the risk. That's the 343A question. Preceding the 343A question is the 343 question, which it doesn't look like it's answered explicitly. So my question to you is, should we be accepting it as having been implicitly answered by the judge that there was risk here and a duty associated with that risk? Or should we say, hey, you just blew it and went straight to 343A. This case has got to go back because you skipped a step. Well, I mean, this court does have a plenary review of a summary judgment motion. So whether the court missed part of the restatement or not, I think this court doesn't need to defer to that. But anyway, that's your question. I'm trying to ask you how you read it. Should we read this as saying, implicitly, I find that there is a risk here and they had a responsibility. But I'm going straight to 343A, and I'm just going to say it was an implicitly answered question. Should we read it that way? Or should we read it and say, hey, he missed a step. It's got to go back. Because he started talking about obviousness when he should have talked about risk and responsibility on Harris' part to start with. What do you think is the better reading? Or do you think there's some third reading that I'm missing? I think the judge sort of crossed, I think the judge did address both. Because first of all, he talks about the pool itself being an obvious hazard. And in fact, plaintiff's counsel just said, everybody knows a pool is dangerous. So you're saying it's at least implicit. It's at least implicit that the judge understood and was saying that Harris had a responsibility and a drinking and dancing parties all around a pool, right? Yes. But the risk was matched with the local and state requirements that we have a lifeguard. There's safety regulations. And there's no indication in the record that there were any violations of those safety regulations. So regarding whether it was a pool or safety regulations as to just a venue, a nightclub, with the number of people in attendance, we had security guards there, we had a lifeguard. So whatever risk that was reasonably foreseeable, we met with appropriate measures to prevent any kind of injury to the patrons. Thank you. You've gotten right to the point. Isn't that usually the kind of thing that we ask a jury, whether the measures taken were commensurate to address the risk? Well, that would be classically, classically a question for the jury. Did you do enough to protect the public from a known risk? That would be I would guess that a question of breach. But before we even get to that, the issue of whether there was a legal duty to protect against the type of harm suffered, allegedly suffered by plaintiff is, is what? See, that's why I started where I started, because I thought we were, I thought we'd just gotten past that. I thought we'd agreed that at least implicitly, the judge had said, there's a duty to protect here, because this is a risk. It's a risk to, it's a risk to invite people to your property, give them a bunch of liquor, put on some music and say dance, right up and then let them dance right up to the edge of the pool that that's that there's risk there. In fact, he thought it was so risky. Apparently, he went on to say it's an obvious, obvious risk under 343. And I thought you agreed with that. So if we've gotten that far, we've already said there's a duty. And now our question is just what you said, breach. And isn't that the question that we usually give to juries? If yes, the breach would be a suggest that there was a breach of that duty, or that that was the proximate cause of the, of the alleged injuries. And it's this is a case where no reasonable jury could find for plaintiff on these facts, because they're just not there. I mean, this was a situation that happened out of the blue. I mean, they were dancing, and somebody out of the blue, it's happened. It's eight times in the previous few months, like who knew that people getting drunk and dancing right next to the pool might get knocked in. Apparently, Paris knew because they had multiple examples of it on their safety record, at least on this record, no, except for that, those incidents of people getting those prior incidents of people getting pushed into the pool did not result in an injury. So the risk there was that people would get wet, not that they would be injured, but that they might get well, that's the risk here that really is those prior incidences indicate that, that there's not a risk of injury to of the type that plaintiff sustained. And so in that respect, it is out of the blue. I mean, these were, they were dancing close to the pool. Not there were no prior words between the two women, it just you there were no, there's no scuffle, there were no altercation. She just got bumped and fell into the pool, according to her complaint. So that is something that is, even though it does exist, whether it would be preventable, I think there's no, there's no, that's not even a question for the jury, it shouldn't even get that far, because maybe you don't think you don't think a jury might say, hey, maybe you should have sort of this chained off a couple feet from the pool's edge, you know, you want to put some sort of a chain around that thing to keep people from going right up to the edge or, or maybe there's some other barrier or safety, you know, you don't think any reasonable juror might say, well, you know, what a little safety, a little bit of a safety spot might be in order, no reasonable juror could think that? Well, I think that that would actually be a legal question for this court to decide, because if there, if there's going to be a requirement, if the duty of care, isn't that breach? Isn't that about? No, isn't that about? Isn't that about breach? We're past duty. We're past duty. We'd accepted there's some duty here. And now the question is, what, how do you fulfill that duty? And did Harris do enough for it? But I, you and I have gone back and forth on this, I think I understand your position. I'm grateful for it. I let me just ask Judge Mady and Judge Rand, if they've got issues, they'd like to bring up Judge Mady. There was the jurisdictional point that you wanted to get to that Judge Mady, I know, asked earlier about that. Yeah, well, thank you, Judge Jordan. Before you counsel, before you turn to the jurisdictional question, which I welcome your response on, let, let's assume for a moment that there is a duty, let's assume the harm was foreseeable, right? Where, where does this court factor in the questions of public policy that the New Jersey Supreme Court has, has urged as relevant to determining this question? Is it a, is it a legal question that we then look for on top of it? Is that a factual question that somehow the jury considers? Because the court has spoken often about how it is that we need solutions that are properly and fairly case-specific, intelligent, and sensible rules to govern future conduct. It seems that potentially the future conduct here goes beyond this particular pool and this particular, and this particular. So where, if at all, do we consider that in, in our review? Well, I, public policy, I, I'm not, I think the public policy issue would be just a general issue about safety. And as I referenced before, there are regulations for public venues. There are regulations for pools and none of those involve any kind of barrier between the pool and people who are walking next to those pools. So I guess as, as far as a public policy, if this were to go to, if this court were to determine that the duty did include creating some kind of a barrier between the pool and the, the patrons, that would, it, it might create, create a tension between legislative function and judicial function because the, you know, because the, the legislature, whether local or state, are the ones who determine what regulations are reasonably safe. And they have done so. And, and I think that that, that would, I think would only be the public policy. But there's also an issue, and I'm not sure if this is quite public policy or fairness. I think that if there, there were a finding that pools must, you know, erect a barrier between the pool itself and the, the patrons nearby, there, there would be, if every pool was, was requiring, would be required to do that, there would be events such as, you know, swim meets at schools or other public pools where meets would occur. If every single pool now was required to place a barrier, I just think that the cost of that. Well, we're, we're not really, we're not really talking about every single pool needing a barrier, right? We're just, we're kicking around hypotheticals about what a jury might think would a responsible nightclub owner do who chooses to have dancing and drinking all around a pool, which is not the usual use for pools. Pools are not typically the site of nightclub dancing. That, that may be one of the things that makes Harris Pool at Night thing attractive. It's a, it's, it's not the usual. But, but I, I may have interrupted where you were going with Judge Mady's question. I, I, I live at the shore, so we don't do too, we, we're more ocean goers, not pool goers, but I, I mean, I, I'm thinking of other. But, but not to, you know, I've been to the, I've been to the shore once or twice, both as an older man and a younger man, and you do have bars, right? And so the, the idea that intoxicants can lead to injury is not something unusual, right? And so I, I, I suspect you would say that not only are there implications to how the regulations involving pools are interpreted, but how the regulations involving bars could be interpreted. It's possible that you could have a staircase near a dance floor. It's possible that the dance floor could be elevated by a foot or so. It would seem that these dangers could occur then. So I, I imagine part of your response will be, yes, there are similar analogous events throughout the state, be they on the pool side or the bar side, and we should consider those as well. Yes. However, I'd like to remind the court that this is not a dram shop case. I mean, negligence relating to alcohol service is exclusive remedy of, of the dram shop act. And we raised this in our brief that any argument, Hold on. It's, there's not a dram claim anymore. There was one and we know that's out of the case, but certainly when assessing levels of risk, you're not suggesting that the fact that the dram shop claim is no longer in the case means the fact that there are widespread use of intoxicants at the nightclub is irrelevant. Are you, are you suggesting that's irrelevant? I suppose it would depend on how much of a factor that is. It's part of the, it's part of the invitation. Come to our party. We're going to play loud music. We're going to have lots of alcohol. Dennis Rodman will be here. There's a pool. It's fun. I mean, it's all part of the mix, isn't it? I mean, yes, but it is open risk that anyone who attends is going to understand that those things aren't right. It isn't like going to grocery shop at a high crimes area where the patron doesn't know those crimes exist. Sure. So what do you want to say about jurisdiction? Oh, jurisdiction. Now I'm sure the court can appreciate our frustration with this particular issue because we would prefer this court to simply affirm summary judgment below, affirm the opinion of judge Rodriguez. That said, if by some miracle plaintiff was able to get in front of a jury or find her a fact and convince them somehow that Harris was liable, she's not going to convince them. I mean, that that's where her good fortune would end. She is not going to convince a jury that this is a $75,000 case. The submission. It says we're bound to follow what the U.S. Supreme court says. And the way they put it is it must appear to a legal certainty that the claim is really for less than the jurisdictional amount to warrant dismissal. It must appear. That's a quote. It must appear to a legal certainty. Now, I understand you think they've got a snowball's chance, but they don't think so. And they put some things forward that indicate permanent disfigurement, permanent loss of function, pain and suffering. Could you can you really say and and it's I think you're right, maybe to your advantage to keep this case here? I don't know. But can you really say legal certainty? No way a jury would ever look at permanent disfigurement, loss of function, pain and suffering medical bills and say north of 75,000. No jury could ever say that. Well, what plaintiff relied on was her own subjective testimony, not on any other evidence in the file, including her own medical expert who rendered a report saying that the prognosis and a reading from this report says the prognosis from these types of fractures is very good. She also apparently re injured her hands after this incident. And so those are all great, all great arguments that a jury might buy to say there's less than 75000. But I repeat, our standard is it must appear to a legal certainty that there's no way the claim could be an access to that. And so I guess I'm just you're saying, yeah, it's a legal certainty that is that the position? I think that their expert is saying that, in addition to which, which is more reliable, I think the plaintiff's subjective statements and her deposition testimony, in addition to the fact that there were no medical claims didn't supply the court with any medical records. Our calculation from back in 2017 is that as of June 27, you never challenged it, right? Yeah, you didn't ever challenged. Again, we're saying is that we I mean, we would prefer this court to affirm Judge Rodriguez. Not say that we don't have to say so I probably I mean, okay. I'll stop talking. I gotcha. Just ran. No questions. Thank you. Judge, maybe. I may have interrupted you, Ms. Barr. Was there something you wanted to say to sum up? No, actually, just all of our arguments are pretty much supplied in our brief and what with whatever the questions the court had today. So we'll we'll rest them. Thank you. Thanks, Mr. Bruno. Thank you, Mr. Bruno. You have three minutes. Thank you, Judge. First of all, I think your honor had regard to closing. That is a responsibility for them to take reasonable precautions. And the closing court says that the existence of a duty to take reasonable cautions is on the property owner, and that would be factually intensive. And so in terms of, you know, who makes that decision, it shouldn't be the jury that makes that decision. With regard to my client, by the way, even though there was drinking my testimony, record testimony, my client actually did not have any drinks that night as she was dancing. And that would go towards her, I guess, comparative negligence, if you will, in terms of dancing where she was dancing. With regard to what you can do around the pool, all you have to do is say, here's where you can dance. Here's where you can't dance. It's just that simple. Here's a dedicated dance floor. You can, you know, we'll mark off, here's where you dance. You don't even need a barrier. But if you want them to dance as close as you can, you can put a barrier. Why don't you respond to Ms. Barr's point that there are safety regulations associated with pools. They are set by elected officials with the advice of experts. And it ill behooves, I mean, I'm putting words around, but it ill behooves the court to stick itself in where there's been policy judgments made. What's your response to that? Well, I didn't see any safety regulations with regard to nightclubs and pools. I think that this is a unique situation. I think this is the only one in New Jersey, the only pool in New Jersey, that has dancing and alcohol at that location. And I don't believe that the record shows any regulations that New Jersey has with regard to that. So yeah, generally there are regulations with regard to pools, you know, but not with regard to the unique business model that Harris has adapted in this situation. And even if the regulations are such, the fact that you have continuing problems at your pool doesn't mean that, you know, that complying with the regulations is sufficient. That also would be a jury question, whether you should take that extra step because you have the superior knowledge that something's going to happen. And in fact, does happen on a regular and routine basis. And all you do is collect the money and say, okay, we'll hire these off-duty Atlantic City policemen to arrest the two disorderly conducts each night and the fighting that we get once a week there, in addition to the people who get pushed or bumped in the pool. But just one last point, and that is with regard to counsel's argument that the fact that they had, at least they say that they had no injuries before with regard to people being bumped into the pool, that that's not the standard. The standard is the foreseeability. And even foreseeable risk that someone who gets bumped into the pool is going to be injured. And I think the court, I think we put in there that in the United States, each year, there's over 36, $3,700 drowning, 3,700 drownings each year by people just landing in the pool. And that would be the ultimate injury. So. Okay. All right. Thank you very much. Appreciate your argument, Mr. Bruno and Ms. Barr. We've got the as soon as we practically can. Thank you for the briefing and for argument today. And we'll call our next case. Thank you.